J. S63014/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  T.W.P., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF:  S.S., MOTHER | : | No. 3511 EDA 2015 |

Appeal from the Order, November 4, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. 51-FN-382382-2009,
CP-51-AP-0000204-2014, CP-51-DP-0002021-2011

| | | |
|---|---|---|
| IN THE INTEREST OF:  Z.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF:  S.S., MOTHER | : | No. 3520 EDA 2015 |

Appeal from the Order, November 4, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. 51-FN-342382-2009,
CP-51-AP-0000203-2014, CP-51-DP-0002024-2011

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R.F., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF:  S.S., MOTHER | : | No. 3522 EDA 2015 |

Appeal from the Order, November 4, 2015,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. 51-FN-382382-2009,
CP-51-AP-0000205-2014, CP-51-DP-0002022-2011

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND FITZGERALD,* JJ.

---

* Former Justice specially assigned to the Superior Court.

J. S63014/16

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED SEPTEMBER 28, 2016**

S.S. ("Mother") appeals from the decrees and orders entered November 4, 2015, in the Court of Common Pleas of Philadelphia County, Family Court Division, granting the petitions of the Philadelphia Department of Human Services ("DHS") and involuntarily terminating her parental rights to her dependent children:  T.W.P., Jr., born in December of 2005; J.R.F., born in March of 2010; and Z.F., born in April of 2011 (collectively, the "Children"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b), and changing the Children's permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351.[1][2]  After review, we affirm.

We summarize the relevant procedural and factual history as follows:

---

[1] In a separate decree entered on August 13, 2015, the trial court terminated the parental rights of T.W.P., Jr.'s, father, T.W.P., Sr. ("Father 1"), pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). Father 1, who is incarcerated, has not filed an appeal from the termination of his parental rights, nor is he a party to the present appeal.

Further, in separate decrees also entered on November 4, 2015, the trial court terminated the parental rights of putative father of J.R.F. and Z.F., father, J.F. ("Father 2"), also pursuant to Sections 2511(a)(1), (2), (5), (8), and (b).  Father 2 has filed an appeal at Pennsylvania Superior Court Docket Nos. 3593 EDA 2015 and 3596 EDA 2015.

[2] Mother does not specifically contest the change of the Children's permanency goal to adoption.  Therefore, Mother has waived any challenge to the change of permanency goal. ***Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that, a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

- 2 -

This family became known to DHS on April 16, 2011, when DHS received a General Protective Services report that Mother and her newborn children tested positive for benzodiazepines and marijuana at the time of delivery.[3] (Notes of testimony, 7/10/15 at 98-100, 126.) Mental health and domestic violence issues were also raised. (Notes of testimony, 8/5/14 at 39-40; 7/10/15 at 103-104, 135.) On November 9, 2011, the Children were adjudicated dependent with DHS supervision and in-home services.[4] (Notes of testimony, 7/10/15 at 100, 110, 117.)

After Mother was observed under the influence, on January 9, 2013, DHS obtained Orders of Protective Custody for the Children. (DHS Exhibit 2; notes of testimony, 7/10/15 at 105-106.) On January 11, 2013, the court then committed the Children to DHS custody and placed them in foster care.[5] (DHS Exhibit 2; notes of testimony, 7/10/15 at 107-108.) On March 20, 2013, the court again adjudicated the Children dependent. (DHS Exhibit 2.)

---

[3] Mother gave birth to twins, one of whom did not survive. (Notes of testimony, 7/10/15 at 126.)

[4] Father 2 and Mother appealed this determination at Pennsylvania Superior Court Docket Nos. 321 EDA 2013 and 322 EDA 2013, respectively. These appeals were ultimately dismissed on May 23, 2013 for failure to file a brief.

[5] The Children are currently in kinship care. J.R.F. and Z.F. are placed together, separately from T.W.P., Jr., in a pre-adoptive home. However, testimony was presented that J.R.F. and Z.F.'s resource family plans on adopting T.W.P., Jr., as well. (Notes of testimony, 7/10/15 at 27-28, 34, 167.)

Mother's Family Service Plan ("FSP") objectives included drug and alcohol treatment, mental health treatment, domestic violence counseling, and appropriate housing. (Notes of testimony, 8/5/14 at 19, 21.) She was additionally referred for a parenting capacity evaluation and a dual diagnosis assessment. (*Id.* at 21.)

In March of 2014, the case was transferred to Turning Points for Children, a Community Umbrella Agency ("CUA"). (Notes of testimony, 8/5/14 at 16; 7/10/15 at 12.) Prior to transfer, in March 2014, DHS changed the Children's permanency goal with regard to the FSP to adoption. (Notes of testimony, 8/5/14 at 25-29, 43-45.)

The trial court held permanency review hearings in this matter on June 20, 2013, October 15, 2013, and January 14, 2014. Throughout these reviews, the trial court maintained the Children's commitment, placement, and permanency goal.

On April 30, 2014, DHS filed petitions to involuntarily terminate parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b), and to change the Children's permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351. The court then conducted combined termination and goal change hearings on August 5, 2014, July 10, 2015, and August 13, 2015. Mother and Father 2 each testified on their own behalf. Father 1,

who is incarcerated, did not appear, but was represented by counsel.[6] Additionally, the court heard from the following witnesses: Markey Mosley, former DHS social worker; Alimata Doumbia, case manager and supervisor, Turning Points for Children; Craig Minus, DHS social worker; Dr. Erica Williams, psychologist, Assessment & Treatment Alternatives, Inc., stipulated to be a specialist and expert in child and adolescent psychiatry;[7] Devon Jacques, case manager, Turning Points for Children; Devonnae Grasty, visitation coach, Turning Points for Children; Cipriana Arias, permanency specialist, Turning Points for Children; and Christina Tavares, child advocate social worker.

On November 4, 2015, following the submission of written closing argument, the trial court entered decrees involuntarily terminating Mother's parental rights to the Children and orders changing the permanency goal to adoption. New counsel was appointed for Mother for purposes of appeal on

---

[6] Father 1's criminal abstract was admitted as DHS Exhibit 3. (**See** DHS Exhibit 3.) Counsel for Father 1 stipulated to DHS 3 and that Father 1 is "unable to care for [T.W.P., Jr.] for the foreseeable future." (Notes of testimony, 8/13/15 at 27.) He further stipulated that the current CUA worker would testify to the lack of a current relationship between Father 1 and T.W.P., Jr., and that it would not cause any irreparable harm if the relationship were to be severed. (**Id.** at 27-28.) As indicated, Father 1 has not appealed the termination of his parental rights and he is not a party to the present appeal.

[7] Dr. Williams conducted a parenting evaluation as to Mother and issued a related report dated July 3, 2014, and marked DHS Exhibit 27. (Notes of testimony, 7/10/15 at 130. **See** DHS Exhibit 27.) She therefore offered testimony as to Mother only. (Notes of testimony, 7/10/15 at 128-155.)

November 12, 2015. Thereafter, on November 18, 2015, Mother, **pro se**, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this court consolidated **sua sponte** on December 18, 2015. Appointed counsel subsequently filed a brief on behalf of Mother. On appeal, Mother raises the following issues for review:

> 1. Judge had no authority to rule in said matter for he was recused/disqualified from these proceedings for his partiality and biasness [sic] against [Mother] in open court.
>
> 2. Judge [sic] ruling was in contradictory [sic] to statutory and constitutional law; violating due process rights of [Mother].
>
> 3. Judge have [sic] created an arbitrary situation by forcing the incompetent attorney of the Defenders Association that I asked to be taken off my case [and] he said no in open court.

Mother's brief, at 2.[8]

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, 616 Pa. 309, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its

---

[8] In the summary of argument and argument portions of her brief, Mother, through counsel, for the first time raises Sections 2511(a) and (b). (**Id.** at 4-11.)

discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, 9 A.3d [1179, 1190 (Pa. 2010)].

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis

> pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

At the outset, we note that DHS argues that Mother has waived all arguments on appeal as she failed to include them in her concise statement of errors and failed to develop her argument through citation to pertinent legal authority.[9] (DHS's brief, at 17.) DHS contends that Mother waived the challenge to the trial court's rulings pursuant to Section 2511(a) and (b) as they were not included in her concise statement of errors. (*Id.* at 17-18.) DHS further avers that Mother waived any argument with regard to those issues raised in her concise statement and questions presented as she "fail[ed] to develop or reference them in her Argument." (*Id.* at 19.) As summarized:

> Here, Appellee DHS is unable to address the issues identified in Mother's statement of questions

---

[9] Counsel for the Children joins in DHS's brief.

presented because the issues are not addressed in any form or fashion in her Argument. Accordingly, these issues are waived, and Mother's appeal should be denied. Additionally, the two arguments that Mother raises for the first time in the Argument section of her brief are waived for the reason that the issues she raises (challenges to the trial court's findings under Sections 2511(a) and (b) of the Adoption Act) are not included in her Rule 1925(b). These two issues are also waived as a result of Mother's failure to list them in her Statement of Issues Presented. Accordingly, for the foregoing reasons, Mother's appeal should be denied.

*Id.* at 20-21 (citations omitted).

We could find that Mother waived opposition to the trial court's disposition regarding Sections 2511(a) and (b), as she failed to include them in her concise statement of errors. ***Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that, a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); Pa.R.A.P. 1925(b)(4)(vii) (stating, "Issues not raised in the Statement and/or not raised in accordance with this paragraph (b)(4) are waived.").[10] Nonetheless, pursuant to

---

[10] We do, however, find that, as Mother failed to develop any challenge and/or argument regarding those issues raised in her concise statement of errors and statement of questions involved in the argument portion of her brief, she waived any such argument. ***See In re W.H.***, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (stating, "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

*Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (finding a lack of waiver where the nature of a claim can be readily apprehended), we conduct a review of the termination of Mother's parental rights. Significant to this determination, the trial court assessed the termination of Mother's parental rights pursuant to Sections 2511 (a) and (b). (Trial court opinion, 3/22/16 at 12-16.) We, thus, examine the trial court's termination of Mother's parental rights as argued in her brief.

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination pursuant to Sections 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

- 10 -

> incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first examine the court's termination of Mother's parental rights under Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the

contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting ***In re A.L.D.***, 797 A.2d 326, 337 (Pa.Super. 2002).

Mother argues that the trial court erred as grounds for termination pursuant to Section 2511(a)(2) were not supported by clear and convincing evidence. (Mother's brief, at 5.) Mother contends that the evidence demonstrates her attempt at establishing and maintaining a relationship with the Children and engaging in efforts to remedy the causes for the Children's placement. (***Id.*** at 5-6.) "Although her children were not in her care, [M]other through her efforts to remain close to her children, exhibited that she was eradicating any repeated neglect, that caused them to be placed in foster care." (***Id.*** at 6.) Mother further maintains that she "has demonstrated her commitment remedy [sic] the situation that brought her children into DHS custody. Furthermore, DHS has not proved that she could not remedy such conditions." (***Id.***)

In finding grounds for termination pursuant to Section 2511(a)(2), as well as (a)(5) and (a)(8), the trial court stated:

> This Court found clear and convincing evidence to terminate Mother's parental rights pursuant to Sections 2511(a)(2), (5) and (8). The evidence supports this Court's finding that Mother lacked the capacity to provide permanency and safety for the Children. Mother was active drug user who was in and out of treatment for 2-3 years. Mother failed to address or even recognize that she was in a

relationship with severe domestic violence which threatened the Children's safety. Additionally, Mother was inconsistent with mental health treatment. She was unemployed and living in a home with no electricity. Finally, the results of a Parenting Capacity Evaluation concluded that Mother was out of touch with reality and was unable to provide safety and permanency required to parent the Children. Mother took no accountability for her behavior and blamed her mother for the reason that her Children were in care. In addition, . . . the Court found it was in the Children's best interests to terminate Mother's rights because the Children, were doing well in their pre-adoptive homes, under the care of foster parents who were meeting all of their needs.

Trial court opinion, 3/22/15, at 14-15. Upon review, we agree.

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2) and substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. *See id.* As the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decrees with regard to Section 2511(a)(2). *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We next determine whether termination was proper under Section 2511(b). With regard to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

As further recognized in *T.S.M.*:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the

existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See*, *e.g.*, *R.J.T.,* 9 A.3d at 1190 (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

71 A.3d at 268-269.

Mother argues that the court failed to consider evidence of the continuing bond between her and the Children and her attempts to comply with the objectives set forth for her reunification with the Children. (Mother's brief, at 7-11.) Mother avers that "there has not been adequate consideration of the emotional needs of the children because mother continued to maintain a bond with her children while she was attempting to comply with DHS objectives, as her children remained in placement." (*Id.* at 10.)

This court finds that Mother's argument regarding Section 2511(b) lacks merit. Again, upon review, as the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's decrees with regard to Section 2511(b). ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). We affirm the trial court's decrees with regard to Section 2511(b) on the basis of the discussion in the trial court opinion. (Trial court opinion, 3/22/15, at 15-16.)

Based on the foregoing, we affirm the decrees and orders of the trial court terminating Mother's parental rights and changing the Children's permanency goal.

Decrees and orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2016